United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HAO-QI GONG, and JEFFEREY PETERS,

    Plaintiffs,

v.

CITY OF ALAMEDA, et. al.,

    Defendants.

**NO. C 03-5495 TEH**

**ORDER DENYING MOTION FOR RECONSIDERATION**

This matter came before the Court on Monday, July 9, 2007 on Plaintiff Gong's Motion for Reconsideration. Having carefully considered the parties' written and oral arguments, and the record herein, the Court denies the motion for the reasons set forth below.

## I. INTRODUCTION

As discussed in prior orders, this case stems from the arrest of Plaintiffs Hao-Qi Gong ("Gong") and Jefferey Peters ("Peters") following a welfare check on their son, Kyle, by the City of Alameda Police Department on February 4, 2003. To briefly summarize,[1] two officers went to Plaintiffs' apartment but received no response to their repeated knocks on the front door. They observed, however, a shadowy figure through the peep hole and subsequently entered the apartment due to concerns for the safety of Plaintiffs' son. After the ensuing interactions with Peters, and a brief encounter with Gong, the officers arrested

---

[1] A fuller recitation of the facts is contained in the Court's January 17, 2007 Order Re Summary Judgment.

both Peters and Gong for obstructing a welfare check in violation of California Penal Code § 148 and took them into custody.

Defendant Officer Westmoreland ("Westmoreland"), supervisor of the Alameda Police Department's Youth Services section, subsequently interviewed Kyle regarding the assertions by his grandmother that Kyle had been digitally anally penetrated twice by his mother, Plaintiff Gong. In light of his observations during that interview, and all of the surrounding circumstances, Westmoreland took Kyle into temporary protective custody and filed additional charges against Plaintiff Gong for violation of California Penal Code §§ 288(a) and 289(d)(4), which prohibit lewd acts with children and penetration by a foreign object (hereinafter "sex charges"). He also referred Kyle for an interview with the Child Abuse Listening Interviewing Coordination Center (referred to as "CALICO") located in San Leandro, California.

Plaintiffs subsequently filed this action alleging several constitutional violations under 42 U.S.C. § 1983. On January 17, 2007, this Court granted in part and denied in part Defendants' motion for summary judgement. Relevant to this motion, the Court granted summary judgment in favor of Defendants with respect to Plaintiff Gong's § 1983 claim that the addition of the sex charges violates her Fourth Amendment rights. Gong subsequently sought and obtained leave to file the instant motion for reconsideration with respect to the following two issues: (1) whether Westmoreland lacked probable cause to add the sex charges against Gong, and (2) even if probable cause was lacking, whether Westmoreland is protected against a claim for money damages under the doctrine of qualified immunity. Each issue is discussed in turn below.

## II. DISCUSSION

### A. Probable cause to add the sex charges against Gong

This Court previously found that there was probable cause to support the sex charges in light of (1) the grandmother's allegations, (2) the confirmation of the digital penetration by Kyle, and (3) Westmoreland's assessment of Kyle's verbal and non-verbal responses during

2

1  his interview with Kyle.  The Court, however, did not address the more narrow question of
2  whether there was probable cause as to the specific intent elements of the sex charges.
3  Generally, an officer need not have probable cause for each element of a crime; however,
4  "'when specific intent is a required element of the offense, the arresting officer must have
5  probable cause for that element in order to reasonably believe that a crime has occurred.'")
6  *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007) (citation omitted).  Both Penal
7  Code § 288(a) and § 289(k)(1) require a showing of specific intent.  The former requires that
8  the penetration occur "with the [specific] intent of arousing, appealing to, or gratifying the
9  lust, passions, or sexual desires of that person or the child" while the latter requires that the
10 penetration occur by false pretenses.

11      Probable cause to arrest requires "more than mere suspicion." *Gasho v. United States*,
12 39 F.3d 1420, 1428 (9th Cir. 1994).  Probable cause exists when the "facts and circumstances
13 within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of
14 reasonable caution, in believing, in the circumstances shown, that the suspect has committed,
15 is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37
16 (1979).  Alternatively, probable cause is established when "'under the totality of
17 circumstances known to the arresting officers, a prudent person would have concluded that
18 there was a fair probability'" that a crime was committed." *Lopez*, 482 F.3d at 1072 (citation
19 omitted).  Once a defendant has provided "some evidence" of probable cause, it is the
20 plaintiff's burden to prove a lack of probable cause. *Dubner v. City and County of San*
21 *Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).   A summary judgment, however, is
22 "appropriate only if no reasonable jury could find that the officers did or did not have
23 probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).

24      Upon reconsideration, and viewing the evidence in the light most favorable to Gong,
25 the Court concludes that a reasonable jury could find that probable cause was lacking with
26 respect to the specific intent elements of the sex charges.  While there is no direct evidence
27 of intent, that is not unusual in cases of this nature.  With respect to the circumstantial
28 evidence, a jury viewing it from Plaintiff's point of view could infer that Westmoreland had

3

a reasonable suspicion that Gong acted with the requisite intent but that it did not rise to the level of establishing probable cause.  For example, the jury could conclude that it was more likely that Kyle's change in demeanor had an innocent explanation or discount this portion of Westmoreland's testimony given its omission from his police report.  A jury could also give more weight to the fact that Kyle reported an innocent explanation for the digital penetration (to help Kyle go to the bathroom) to both his grandmother and Westmoreland, and view this explanation as more consistent with the evidence of general parental neglect than a sexual motive.  Accordingly, the Court concludes upon reconsideration that Westmoreland is not entitled to a summary judgment that probable cause was lacking as a matter of law with respect to the specific intent elements of the sex charges.

### B. Qualified Immunity

Plaintiff has not, however, presented any persuasive basis for reversing this Court's prior conclusion that, even if probable cause was lacking, Westmoreland is protected by qualified immunity.  Qualified immunity protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus "our inquiry now turns to whether a reasonable officer could have believed that the [sex charges] were lawful in light of the clearly established law and the information the arresting officer[] possessed." *Gasho*, 39 F.3d at 1439.  This is "an objective standard" that leaves "'ample room for mistaken judgments.'" *Duran v. City of Douglas*, 904 F.2d 1372, 1376 (9th Cir. 1990)(citation omitted).  Indeed, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (citations omitted). *See also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity).

As both parties agree, the law was clearly established that probable cause was required with respect to any specific intent elements of a crime.  As noted above, direct

evidence of a sexual intent is often lacking, particularly in cases involving children. Looking at the totality of the circumstances known to Westmoreland, however, the Court concludes that even if a jury finds that probable cause was lacking, a reasonable but mistaken officer could have believed that adding the sex charges did not violate clearly established law.

Westmoreland was aware of the general investigation into Kyle's welfare including the concerns raised by Kyle's grandmother (with whom Kyle was living for six months up until January 2003) that Plaintiff Gong had digitally penetrated Kyle for improper purposes. Kyle also confirmed the penetration in a manner that led Westmoreland to believe that Kyle's proffered explanation was rehearsed and not the truth. *See* Westmoreland Dep. at 57. This conclusion was based on his training on the subject of child victims of sexual abuse and his experience in interviewing "hundreds and hundreds of kids over the years in similar kinds of cases." *Id*.; Westmoreland June 26, 2007 Dec. at ¶ 2. A reasonable officer could also conclude that anal digital penetration is not a customary manner of treating childhood constipation. Westmoreland had also been informed by the officers conducting the welfare check that they had met with resistance from Peters and that they "were lied to [and] both parents were very uncooperative." Westmoreland Dep. at 37.

There is no case law that addresses what is sufficient to establish probable cause for the specific intent elements of the sex charges. In hindsight, it appears that it would have been the better course under the circumstances of this particular case for Westmoreland to await the results of the forensic interview by CALICO. Given the totality of the circumstances, however, the Court concludes that Westmoreland could have reasonably but mistakenly believed that there was a sufficient basis for concluding that there was a "fair probability" that the specific intent elements of the charges could be established, *Lopez*, 482 F.3d at 1072, 1076-77. Cases involving potential sexual abuse against children raise particularly difficult questions of judgment. In light of all of the above, and the state of the pre-existing law, the Court is not prepared to find that it would have been clear to a reasonable officer in Westmoreland's position that adding the sex charges was unlawful.

5

Plaintiff Gong emphasizes that this conclusion is inconsistent with Westmoreland's deposition testimony that he had no information at the time that Gong had digitally penetrated Kyle with the purpose of sexual arousal but that he hoped the CALICO interview would provide it. *See* Westmoreland Dep. at 72-73. Westmoreland also testified, however, that his department's policy was that if an officer believed there was "sexual misconduct on the child, [then the officer should] get enough basic information from the child or from a reliable witness . . . to *establish probable cause* and then shut it down, bring the child in and let's get them to CALICO where he or she can be interviewed more thoroughly and help us build the case [sic]." Westmoreland Dep. at 55 (emphasis added). Accordingly, Westmoreland's testimony regarding the lack of information and the role of the CALICO interview could be viewed as an inartful way of expressing that while he did not have direct information confirming specific intent he believed he had reached the threshold of probable cause and that it was appropriate to "shut down" the interview and develop the case through the CALICO process. More importantly, the qualified immunity analysis turns on what a reasonable officer could have believed under the circumstances, not the subjective state of mind of the particular officer in question. *Butler v. Elle,* 281 F. 3d 1014, 1031 (9th Cir. 2002)("As stated, qualified immunity is a question of law and the factual question of [the defendant's] state of mind is completely irrelevant to that issue.").

## IV. CONCLUSION

In light of the above, and good cause appearing, the Court reaffirms its conclusion that Westmoreland is entitled to qualified immunity with respect to Gong's claim that the addition of the sex charges violated her Fourth Amendment rights. Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's Motion for Reconsideration is denied.

2. The parties are referred back to Magistrate Judge Elizabeth Laporte for a further settlement conference in light of this ruling.

3. The parties shall notify this Court's Courtroom Deputy, Rowena Espinosa, within 7 days of the conclusion of the proceedings before Magistrate Judge Laporte, as to whether the matter has settled. If the matter has not settled, the parties shall request a status conference for the purpose of setting a new trial date.

**IT IS SO ORDERED.**

Dated: July 30, 2007

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT